## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEROME BETTIS,

            *Plaintiff*,

    v.                                             No. 19-cv-3625 (DLF)

MURIEL BOWSER, *et al.*,

            *Defendants.*

## MEMORANDUM OPINION

Jerome Bettis, acting pro se, brings this civil rights lawsuit against several defendants

under 42 U.S.C. § 1983.  Before the Court are two motions to dismiss, one filed by various

government defendants, Dkt. 13, the other filed by various private defendants, Dkt. 19.  For the

reasons that follow, the Court will grant the defendants' motions.

## I.    BACKGROUND[1]

This case arises out of an incident at Bettis's apartment in November 2018.  Pl.'s Am.

Compl. at 4, Dkt. 24.  Bettis alleges that Monica Miller, the community housing manager of his

building, made a false report to the authorities that Bettis had been "running around the building

with a knife and holle[r]ing I am going to get you."  *Id.*  He alleges that Miller did so because of

Bettis's advocacy against issues in the building, including "sound waves" and "vibrations" in the

building.  *Id.*; Pl.'s Attachment to Amend. Compl. ¶ 12.  He also implicates two family members,

Deneil Bettis and Carmen Bettis, as working against him.  Pl.'s Attachment to Amend. Compl.

---

[1] When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself,
documents attached to the complaint, documents incorporated by reference in the complaint, and
judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624
(D.C. Cir. 1997).

¶ 3.  Bettis alleges that he met with Metropolitan Police Department (MPD) Commander Durriyyah Habeebullah about why the police were not investigating crimes perpetrated against him.  *Id.*  On November 28, 2019, Community Behavioral Health Specialist Ana Chavez, along with police officers, arrived at Bettis's apartment.  *Id.* ¶ 4.  Bettis let them into the apartment, and they made the decision to take Bettis into the Comprehensive Psychiatric Evaluation Unit for a 24-hour evaluation.  *Id.* ¶¶ 5, 12.  After four hours of evaluation, Bettis was released.  *Id.* ¶ 13.

Bettis filed his complaint in December 2019 and amended his complaint in April 2020.[2] He describes this lawsuit as "a civil rights action," *id.* at 1, and asserts that "[t]he ability to speech [sic] freely and adjudicate matters of public and private nature was met with extremely dangerous resistant [sic] in the District of Columbia without the intervention and support of appropriate law enforcement and regulatory bodies."  *Id.*  Two sets of defendants filed motions to dismiss, *see* Gov't Defs.' Mot. to Dismiss, Dkt. 13; Private Defs.' Mot. to Dismiss, Dkt. 19. The Court twice warned Bettis that his "failure to respond to the [] Motion to Dismiss on or before [the deadline] may result in the Court (1) treating the motions as conceded, (2) ruling on the defendants' motion based on the defendants' arguments alone; or (3) dismissing the plaintiff's claims for failure to prosecute."  *See* Minute Order of June 25, 2020; Minute Order of July 15, 2020 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988)).  Bettis filed a response to one of the motions to dismiss, *see* Pl.'s Response, Dkt. 20, and well after the deadline had passed for responding to the other motion, Bettis filed a document entitled "Motion for Partial Summary

---

[2] Bettis initially filed his Amended Complaint, Dkt. 9, on April 9, 2020.  The next day, he filed an Errata and attached a corrected Amended Complaint, Dkt. 12.  The Court recognized the corrected document as the operative amended complaint.  *See* Minute Order of April 16, 2020. However, Bettis's corrected filing did not include the attachments Bettis had previously filed with his original amended complaint.  *See* Pl.'s Attachment to Amend. Compl., Dkt. 9-2. Accordingly, the Court will consider both Bettis's corrected amended complaint and his original attachment as comprising the amended complaint.

Judgment," Dkt. 25, which he later moved to withdraw, Dkt. 29.  In both the motion for partial summary judgment and the motion to withdraw, Bettis complained about the method by which he was served documents, the actions of defendants' counsel in this and other unrelated cases, and the living conditions of his apartment.  The Court granted Bettis leave to file a surreply, Dkt. 26, in which he further addressed the merits of this dispute.  The Court then granted Bettis leave to file a second surreply, Dkt. 30.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted).  However, "the Supreme Court has made clear that . . . there is no requirement 'that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'" *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 (D.D.C. 2012) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).  Although a pro se complaint is generally entitled to liberal construction, *see Washington v. Geren*, 675 F.Supp.2d 26, 31 (D.D.C. 2009), the assumption of truth does not apply to a "legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, a Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.   ANALYSIS

Construing Bettis's complaint liberally, he brings a civil rights lawsuit under 42 U.S.C. § 1983 alleging various constitutional violations against public and private individuals.  Section 1983 "holds liable '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, [another person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (quoting 42 U.S.C.

§ 1983). "To state a claim under [§] 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of the law of a state, territory or the District of Columbia." *Id.* at 312 (internal quotation marks omitted). "Private parties . . . may be deemed to have acted under color of law in two circumstances: when they conspire with state officials, and when they willfully engage in joint activity with a state or its agents." *Id.* at 313. This requires "at a minimum, some overt and significant state participation in the challenged action." *Id.*

A.       **The Government Defendants**

Bettis names Muriel Bowser, the mayor of Washington, D.C., Durriyyah Habeebullah, an MPD commander; and Ana Chavez, a community behavioral health specialist with the D.C. Department of Behavioral Health, as defendants. He later added two additional MPD officers, Paul Skelton and Karim Henry. Bettis sues these defendants both in their individual and official capacities. The Court will first consider the claims against each of the government defendants in their individual capacities and then consider the claim against the government defendants in their official capacities, which under § 1983 is a claim against the municipality itself. *See Atchinson v. D.C.*, 73 F.3d 418, 420 (D.C. Cir. 1996).

1.       *Individual Capacity Claims*

As an initial matter, Bettis does not plead any facts relating to Mayor Bowser. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution [or federal law]." *Iqbal*, 556 U.S. at 676. Bettis fails to do so. He merely lists Mayor Bowser as a defendant without any accompanying allegations that she participated in the alleged violation of his constitutional rights. A "complaint must at least allege that the defendant

[] official was personally involved in the illegal conduct." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997); *see also Stone v. Walsh*, 756 F. Supp. 2d 4, 7 (D.D.C. 2010) (dismissing § 1983 claims against official in his individual capacity when plaintiff alleged no facts indicating official's personal involvement), *aff'd*, No. 10-7177, 2011 WL 1766057 (D.C. Cir. Apr. 4, 2011). Accordingly, any claim against Bowser in her individual capacity must be dismissed.

The same is true of Bettis's claim against Commander Habeebullah. Bettis does not allege specific facts that indicate that Commander Habeebullah violated his constitutional or statutory rights. Indeed, he does not allege that Commander Habeebullah was present or involved with his psychological evaluation. Rather, he merely alleges that he met with Commander Habeebullah about unrelated matters and then was detained for evaluation the next day. *See* Amend. Coml. at 5; Pl.'s Attachment to Amend. Compl. ¶ 3. This implication from temporal proximity alone does not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. Without more, the Court cannot "draw the reasonable inference" that Commander Habeebullah somehow violated the Constitution or federal law. *Iqbal*, 556 U.S. at 678. For this reason, the claim against Commander Habeebullah must be dismissed. *See id.* (holding that a complaint that alleges facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility" (internal quotation marks omitted)).

As to the claim against health specialist Chavez,[3] Bettis does plead relevant facts. He alleges that Chavez was involved in the decision to detain him for a mental health evaluation by

---

[3] As with Mayor Bowser, Bettis does not mention MPD Sergeant Paul Skelton in his Amended Complaint. *See* Am. Compl. Bettis simply lists him as a defendant. That alone is enough to dismiss any claim against Sergeant Skelton. *See Simpkins*, 108 F.3d at 369 (holding that a "complaint must at least allege that the defendant [] official was personally involved in the

"agree[ing] to place Plaintiff under arrest" with MPD Officer Karim Z. Henry. *See* Pl.'s Attachment to Amend. Compl. ¶ 9. Chavez responds to Bettis's allegations, in part, by raising the defense of qualified immunity. *See* Gov't Defs.' Mot. to Dismiss at 7. Because qualified immunity is a threshold issue, the Court will address it at the outset.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because qualified immunity is "immunity from suit," the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (internal quotation marks omitted). Defendants "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (internal quotation marks omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

As to the first prong of the qualified immunity analysis, Bettis appears to argue that Chavez and Officer Henry violated his Fourth Amendment right to be free from an unconstitutional seizure by falsely "arrest[ing]" him. *See* Pl.'s Attachment to Amend. Compl.

---

illegal conduct"). For the sake of liberal construction, however, the Court will assume that Bettis intended to include Sergeant Skelton in the facts surrounding the incident at his apartment. Accordingly, they can be dismissed for the same reasons discussed *infra*.

¶ 9.  Chavez, a community behavioral health specialist with the Department of Behavioral Health, agreed with Officer Henry to detain Bettis for a psychiatric evaluation, *id.*, pursuant to their authority under local law.  *See id.*; D.C. Code § 21-521 ("An accredited officer or agent of the Department of Mental Health of the District of Columbia, or an officer authorized to make arrests in the District of Columbia . . . who has reason to believe that a person is mentally ill and, because of the illness, is likely to injure himself or others . . .  may, without a warrant, take the person into custody . . . and make application for his admission thereto for purposes of emergency observation and diagnosis."); *see also* D.C. Code § 7-1141.02(b) (describing the Department of Behavioral Health as the "successor-in-interest" to the Department of Mental Health).

Bettis concedes that Chavez and Officer Henry based the decision to detain him on the report of Monica Miller, the community housing manager, who told the authorities that Bettis had been "running around the building with a knife and holle[r]ing I am going to get you and so forth."  Pl.'s Am. Compl. at 4.  To be sure, Bettis also alleges that Miller's report was fabricated. *Id.*  Even taking that as true, as we must at this stage of the proceedings, it is of no moment because qualified immunity protects "reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause."  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  In other words, even if Miller's report later turned out to be false, what is relevant is the information that the officials had "at the time of the arrest[]," not in hindsight.  *Wesby*, 138 S. Ct. at 593.  And the report that Bettis was running around the communal building brandishing a knife and yelling threats gave rise to probable cause to believe that Bettis was mentally ill and a danger to himself or others.  In the end, Bettis has not pointed to any authority for the proposition that he had a right to be free from being detained for a mental health evaluation after authorities

received a specific report about his dangerous behavior from a witness on the scene—let alone that such a right was clearly established and "beyond debate." *Id.* at 589. Thus, the officials who made the decision to take Bettis in for an evaluation are entitled to qualified immunity.

2.  *Official Capacity Claims*

"A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself." *Atchinson*, 73 F.3d at 424. And a municipality cannot be held liable for the acts of its employees alone. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978) (rejecting the theory of respondeat superior in this context). Rather, a plaintiff must allege that the municipality followed a "policy or custom" that resulted in the constitutional injury. *See id.* at 694. Under this rule, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (internal quotation marks omitted). Thus, "a section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom." *Atchinson*, 73 F.3d at 422. Because Bettis has not pled any facts supporting the proposition that the District of Columbia falsely arrested him (or violated any of his other rights) pursuant to any policy or custom, his claims against the government defendants in their official capacity must be dismissed.

**B.     The Private Defendants**

As to the various private defendants, Bettis appears to argue primarily that he was retaliated against on the basis of his speech advocating for improvements to the apartment building. To state a claim for relief under § 1983, Bettis must plead facts indicating that these private individuals were acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," 42 U.S.C. § 1983. "[S]tate action

may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, (2001).

Bettis does not plead facts to this effect.  Indeed, the complaint form he completed included a section explicitly prompting him to "explain how each defendant acted under color of state or local law."  Am. Compl. at 4.  Bettis left this section blank.  *Id.*  The closest he comes to pleading relevant facts on this point is his allegation that the apartment building was patrolled by the D.C. police and that the building "appeared to garner large benefits when it came to the District of Columbia regulatory agencies conducting license and inspection violations."  Pl.'s Attachment to Am. Comp. at 1.  Neither of these allegations on tangential matters indicates "a close nexus" between the government and the private actors when it comes to the relevant alleged events.  "[A] complete failure to allege facts that would support a finding of action under color of law . . . affords valid grounds for dismissal of a [§] 1983 claim."  *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991).  Thus, the claims against private the individuals must be dismissed.

C.    **Supplemental Jurisdiction**

For the reasons stated above, the Court will dismiss Bettis's § 1983 claims.  To the extent Bettis raises any new federal claims in his responsive pleadings, *see* Pl.'s Opp. (referencing, for the first time, the Second, Sixth, and Eighth Amendments), "[i]t is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss."  *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014).

Although Bettis does not explicitly plead any state law claims, he includes a reference to "false light, slander and defamation" in an attachment to his complaint, *see* Pl.'s Attachment to Am. Compl. ¶ 5.  To the extent that this stray reference can be construed as stating state law

claims, the Court will decline to exercise supplemental jurisdiction.

If "the district court has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over any remaining claims. *Turner v. Corr. Corp. of Am.*, 56 F. Supp. 3d 32, 36 (D.D.C. 2014) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). In light of the early stage of this litigation, the Court will decline to exercise supplemental jurisdiction. Accordingly, the complaint is dismissed in full, but without prejudice as to any state law claims.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss and denies all other pending motions as moot. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 21, 2020

11